**UNITED STATES and Jeffrey L. Marvin, Special Agent, Internal Revenue Service**

v.

**Betty J. CAMPBELL, a/k/a Pam Holiday.**

United States District Court,
D. South Dakota.

March 14, 1975.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., for petitioners.

Frank Wallahan, Charles L. Riter, Rapid City, S. D., for respondent.

## MEMORANDUM OPINION

BOGUE, District Judge.

This action was commenced to obtain judicial enforcement of an Internal Revenue summons, Department of the Treasury Form 2039, issued to the respondent taxpayer, Betty J. Campbell. The summons was served upon respondent on February 28, 1974, and it required her to appear before Special Agent Marvin on April 23, 1974, for the purpose of giving an appropriate handwriting exemplar. The respondent appeared pursuant to the summons but refused to comply with Special Agent Marvin's request that she write various words, letters and numbers in longhand and in print several times with each hand. The respondent contends that she has complied with the summons by virtue of having furnished Special Agent Marvin with a power of attorney bearing a single signature which she identifies as being hers. At the hearing held before this Court on January 17, 1975, the petitioners claimed that additional handwriting exemplars are needed in order for Special Agent Marvin to complete his investigation. The petitioners properly invoke the jurisdiction of this Court under 26 U.S.C. §§ 7402(b) and 7604(a) (1970). The petitioners ask this Court to enforce the summons and compel respondent to comply with its demand for handwriting exemplars.

The summons which is the subject of this action was issued in aid of an investigation in progress conducted pursuant to 26 U.S.C. § 7602 (1954). The purpose of the investigation is to determine the correct federal tax liabilities of Betty J. Campbell for the years 1968 through 1972, and to determine whether

there have been any violations of the internal revenue laws.

■ The use of a summons in aid of an investigation in progress conducted under 26 U.S.C. § 7602 (1954) is clearly proper. In Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L. Ed.2d 548 (1973), the Supreme Court stated:

It is now undisputed that a special agent is authorized, pursuant to 26 U.S.C. § 7602, to issue a summons in aid of a tax investigation with civil and possible criminal consequences. 409 U.S. at 326, 93 S.Ct. at 614.

In Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Supreme Court set out the applicable standard:

We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution. 400 U.S. at 536, 91 S.Ct. at 545.

The Internal Revenue Service need not meet any standard of probable cause to obtain enforcement of its summons. It must show, however, that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and his notified the taxpayer in writing to that effect. United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 115 (1964), United States v. Newman, 441 F.2d 165 (5th Cir. 1971). The Secretary or his delegate is expressly authorized under 26 U.S.C. § 7602(1) to summon the taxpayer or any other person to provide any books, papers, records, or other data which may be relevant or material to the inquiry. The standard for relevance and materiality of the information sought by a summons pursuant to 26 U.S.C. § 7602 is whether such information might throw light upon the tax liabilities under investigation. United States v. Matras, 487 F.2d 1271,

1274 (8th Cir. 1973); United States v. Egenberg, 443 F.2d 512, 513 (3rd Cir. 1971); United States v. Shlom, 420 F.2d 263, 265 (2nd Cir. 1969) cert. den., 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970). The word "might" in the above standard means simply that there must be "a realistic expectation rather than an idle hope that something may be discovered." United States v. Harrington, 388 F.2d 520, 524 (2nd Cir. 1968). This standard does not make meaningless the adversary hearing to which the taxpayer is entitled before enforcement is ordered because at the hearing the taxpayer "may challenge the summons on any appropriate ground." Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459, 461 (1964). When the petitioner has established legitimate purpose, relevancy, materiality, necessity and notification, as it has done in this case, the burden of establishing that the summons is improper and that its enforcement would be an abuse of the Court's process is on the party opposing enforcement. United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L. Ed.2d 112, 115 (1964), United States v. Giordano, 419 F.2d 564, 569–570 (8th Cir. 1969) cert. den., 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). In this case the respondent has failed to meet its burden.

The petitioner in this case has identified several bank money orders and cashier's checks, issued during the period of time under investigation, which are believed to have been purchased by the respondent taxpayer. Several of these items are in names other than the taxpayer's, including known aliases of the taxpayer. Consequently, handwriting exemplars of letters and numerals in script and in print are needed to compare with the writing on the money orders and cashier's checks. Identification of each item as being in the taxpayer's signature can reasonably be expected to reveal the existence of funds available to the taxpayer and the existence of deductible expenses, both of which would throw light on respondent's correct fed-

eral tax liabilities for the period of time under inquiry.

The handwriting exemplars which are being sought by petitioner are for the purpose of examining the physical characteristics of the handwriting and not to obtain testimony or communication from the respondent taxpayer. Thus, the taking of such handwriting exemplars does not violate respondent's Fifth Amendment privilege against self-incrimination. It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination. Holt v. United States, 218 U.S. 245, 252, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1024 (1910). More recently, in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court relied on *Holt* and stated:

Both federal and state courts have usually held that [the Fifth Amendment privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it. *Id.* at 764, 86 S.Ct. at 1832.

In Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Court again clearly stated the distinction:

One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteris-

tic outside its protection. *Id.* at 266, 87 S.Ct. at 1953.

In accordance with the above authority this Court holds that enforcement of the subpoena compelling respondent to produce a handwriting exemplar does not violate respondent's Fifth Amendment privilege against self-incrimination.

Similarly, production of handwriting exemplars violates no Fourth Amendment privilege. The Eighth Circuit Court of Appeals in United States v. Matras, 487 F.2d 1271 (1973) said that:

The power of the I.R.S. to investigate the records and affairs of a taxpayer has long been characterized as an inquisitorial power, analogous to that of a grand jury, and one that should be liberally construed. *Id.* at 1274. *See also,* United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112, 114 (1964).

The United States Supreme Court held in United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), that a grand jury subpoena is not a "seizure" within the meaning of the Fourth Amendment and stated:

In Katz v. United States, supra, [389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576] we said that the Fourth Amendment provides no protection for what "a person knowingly exposes to the public, even in his own home or office . . . . ." 389 U.S. at 351, 88 S.Ct., at 511. The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. *Id.* at 14, 93 S.Ct. at 771.

More specifically, in United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 67 (1973), the Court held that:

Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's

script than there is in the tone of his voice. *Id.* at 21, 93 S.Ct. at 776.

When the respondent appeared on April 23, 1974, pursuant to the summons, she furnished a single written signature on a power of attorney which she acknowledged to be her handwriting. The handwriting exemplars are being sought for purposes of comparison with the writing on several bank money orders and checks bearing a variety of names, dates and numbers. In order to assure a proper basis for comparison, it is reasonable to require more than a single signature. It is not unreasonable for the respondent to complete within thirty days in the presence of Special Agent Marvin, petitioner's Exhibits 11, 12, 13, 14 and 15. Each of these handwriting specimen sheets shall be completed by the respondent in her handwriting, once with her left hand and once with her right hand, in print and in longhand where the specimen sheets so direct.